## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**ANTOINE LORENZO BOWDEN,**

        Petitioner,

    v.                                  **CIVIL ACTION NO. 2:17cv196**

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

        Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Antoine Lorenzo Bowden's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("the Respondent") Motion to Dismiss, ECF No. 7. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 7, be **GRANTED,** and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

In the Circuit Court for the City of Chesapeake, following a jury trial that began on July 8, 2013 and ended on July 11, 2013, Petitioner was convicted of one count of First Degree Murder and one count of Use of a Firearm in the Commission of a Felony.  ECF No. 9 at 1, ¶ 1. The factual findings of the Virginia Court of Appeals provides the following summary of the evidence presented at trial:

> So viewed, the evidence proved that on August 13, 2011, the victim and his friend, Ameena Scott, attended a party at Erika Sanders's apartment.  The victim was the father of two of Sanders's children, and [Petitioner] was the current boyfriend of Erika Sanders.  Scott testified that the victim and [Petitioner] appeared to be "getting along" at the party and left the apartment together for "about 45 minutes to an hour."  Trial Tr. (July 8, 2013) at 147.  After the party, Sanders invited the victim and Scott to stay the night in the second bedroom of her apartment.

> "[A]bout 5 minutes after laying down," the victim and Scott heard Sanders and [Petitioner] arguing in the master bedroom.  *Id.* at 151.  After a few minutes, [Petitioner] left the apartment, slamming the front door behind him.  The victim then went into the master bedroom to talk to Sanders, and Sanders told the victim that he and Scott should leave.  Scott, however, "felt that [the victim] got it straightened out" with Sanders because "he came back in a minute" and "laid back down."  *Id.* at 154.  Sanders could then be heard talking to [Petitioner] on the phone in the master bedroom.  A "couple of minutes later, the door opened," *id.* at 156, and from the second bedroom, Scott and the victim could again hear Sanders and [Petitioner] arguing in the master bedroom.  Scott could only hear [Petitioner] stating, "they got a daddy," and [Petitioner] stated these words "twice real loud." *Id.*

> The victim then went into the master bedroom and told [Petitioner] that "they don't need to be arguing in front of the kids."  *Id.* at 157.  At that time, the victim's older child was in the second bedroom with Scott, but the victim's younger child was in the master bedroom with Sanders.  Scott "got up to see what was going on."  *Id.* at 58.[1]  Scott testified that [Petitioner] was angry and that he was pacing as the victim spoke to him in calm tones.  The victim was "trying to

---

[1] As the Respondent notes, the Virginia Court of Appeals' reference to page "58" is a typographical error, and the correct pincite citation is to page "158."  *See* ECF No. 9 at 9 n.4.

2

get his son out of the bedroom," but [Petitioner] "pushed his arm" and said "no, you're not going." *Id.* at 160. [Petitioner] then "pulled out his phone to show [the victim] some texts," and Scott then "went in and got the boy out of the room." *Id.* at 160-61. Sanders began telling [Petitioner], "he knows I love you." *Id.* at 161. The victim said, "That's you-all's business," while [Petitioner] continued to pace. *Id.* at 162.

Events continued to escalate, and at one point, [Petitioner] "reached for his back pocket and pulled a gun out and then put it back." *Id.* The victim "said one word," to which [Petitioner] replied, "What?" and suddenly shot the victim. *Id.* at 163. Scott fled into the living room of the apartment and attempted to escape, but she hid behind a couch when she was not able to open the door. From behind the couch, Scott heard the victim ask, "Why did you have to do it like this?" *Id.* at 166. She heard the victim pleading with Petitioner. Sanders then also came "running behind the couch." *Id.* Scott heard [Petitioner] state, "You-all aren't going to play me," and then Scott ran out of the apartment to a nearby convenience store. *Id.* at 167. [Petitioner] then shot the victim a second time, and the victim later died as a result of a gunshot wound to his chest.

At trial, the crime scene technician testified that he discovered two bullet cartridge casings in the master bedroom. He also discovered a bullet hole in the master bedroom wall and a second bullet hole in the master bedroom floor. Both bullets were recovered. One bullet was discovered on the opposite side of the master bedroom wall in the kitchen area, and the other bullet was lodged in the ceiling of the downstairs neighbor's apartment. In addition to the bullets and casings, the crime scene technician recovered a partially burned photograph of "an African-American male, [showing] the top of his head and section of his face and the shoulder." Trial Tr. (July 9, 2013) at 42. The burned photograph was found outside the apartment's entrance. He also discovered an "empty cardboard picture frame behind the TV in the living room." *Id.* at 32.

The medical examiner that performed the victim's autopsy testified that the victim had received two separate "through and through" gunshot wounds, meaning that both bullets "entered and exited" the victim's body. *Id.* at 71. The victim's left thigh had an entry wound and exit wound from one bullet, and the victim's torso also had an entry wound and exit wound from a second bullet. The victim's cause and manner of death was determined by the medical examiner to be a homicide from a gunshot wound to the torso.

ECF No. 9 at 8-9 (quoting ECF No. 9, attach. 1 at 1-3). On July 12, 2013, the jury imposed sentences of life on Petitioner's Murder conviction and three years on his Use of a Firearm conviction. ECF No. 9, attach. 1 at 53. After several months of post-trial motions, these sentences were formally imposed by the Trial Court on December 13, 2013. ECF No. 9, attach. 1 at 53.

On May 7, 2014, Petitioner appealed his convictions to the Court of Appeals of Virginia on the following three grounds: (1) that the trial court improperly admitted ten photographs into evidence over Petitioner's objections; (2) that the trial court erred in refusing to instruct the jury as to voluntary manslaughter; (3) that the trial court erred in denying Petitioner's motion for transcripts of trial proceedings to be prepared prior to Petitioner's sentencing. *See* ECF No. 9, attach. 1 at 54. By Order dated October 30, 2014, the Virginia Court of Appeals denied Petitioner's appeal. ECF No. 9, attach. 1. On May 27, 2015, after finding no reversible error, the Supreme Court of Virginia denied Petitioner's petition for appeal to the Supreme Court. ECF No. 9, attach. 2.

On April 28, 2015, Petitioner filed a *pro se* Motion to Vacate, requesting that the Trial Court set aside his convictions on the grounds that his convictions were void. The Trial Court denied Petitioner's Motion to Vacate on June 30, 2015. ECF No. 9, attach. 3. The Supreme Court of Virginia refused Petitioner's appeal on June 7, 2016. ECF No. 9, attach. 4.

On October 8, 2015, Petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. ECF No. 9, attach. 5. Therein, Petitioner raised the following seven claims, the first six of which alleged ineffective assistance of Trial Counsel: (1) Petitioner's Trial Counsel was ineffective because he failed "to object to jury instruction number 16, upon the ground that it stated an erroneous statement of the law;" (2) Petitioner's Trial Counsel was

ineffective because he failed "to object to the first-degree murder jury instruction number 10; upon the ground that it omitted the elements: Motive, time, place, means and conduct;" (3) Petitioner's Trial Counsel was ineffective because he failed "to object to jury instruction number 4; upon the ground that it removes a factual issue from the jury amounting to a directed verdict;" (4) Petitioner's Trial Counsel was ineffective "in requesting the jury instruction for manslaughter by failing to argue that the Commonwealth's evidence supports such instruction;" (5) Petitioner's Trial Counsel was ineffective because he failed "to object to jury instruction number 12; upon the ground that it stated an erroneous statement of the law;" (6) Petitioner's Trial Counsel was ineffective because he failed "to file a motion to dismiss the indictment; upon the ground that the statute 18.2-32 was unconstitutional as it does not define the word 'murder;'" and (7) the Trial Court's July 11, 2013 conviction order for first-degree murder is void *ab initio*. ECF No. 9 at 2, ¶ 3 (citing ECF No. 9, attach. 5) (internal citations omitted). On May 25, 2016, the Supreme Court of Virginia denied all seven claims and dismissed Petitioner's state habeas petition. ECF No. 9 at 2, ¶ 3 (citing ECF No. 9, attach. 6).

Petitioner filed the instant *pro se* § 2254 Petition for federal habeas relief on April 7, 2017, wherein he raised the following six grounds[2]: (1) Petitioner's trial counsel was ineffective because he failed to object to Jury Instruction No. 16 because according to Petitioner, it was an erroneous statement of the law; (2) Petitioner's Trial Counsel was ineffective because he failed "to object to Jury Instruction No. 4, which informed the jury it could not consider a witness' prior inconsistent statement as "evidence that what the witness previously said is true . . . [and] the instruction removes a factual issue from the jury and amounts to a directed verdict;" (3)

---

[2] Although Petitioner raised an additional ineffective assistance claim in the state habeas petition, referred to by the Respondent as "(a)(2)" and alleging that Petitioner's Trial Counsel was ineffective because he failed "to object to the first-degree murder jury instruction number 10, Petitioner has expressly declined to pursue this claim as a ground for federal habeas relief. *See* ECF No. 9 at 3 n.1 (quoting ECF No. 1 at 5) ("Petitioner voluntarily omits this claim.").

Petitioner's Trial Counsel was ineffective when he requested the manslaughter instruction because he failed "to argue in support of the instruction [that] there was more than a scintilla of evidence to support such instruction;" (4) Petitioner's Trial Counsel was ineffective because he failed "to object to jury instruction 12 on the ground that it stated an erroneous statement of the law;" (5) Petitioner's Trial Counsel was ineffective because he failed "to move to have the murder indictment dismissed upon the ground that Va. statute 18.2-32 is unconstitutional as it does not define the word 'murder;'" and (6) that the Trial Court's July 11, 2013 conviction order for first degree murder is void *ab initio*. ECF No. 9 at 3, ¶ 4 (citing ECF No. 1 at 3, 5, 8-12).

On August 31, 2017, the Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and a *Roseboro* Notice. ECF Nos. 7-10. Petitioner filed an untimely Response on October 25, 2017. ECF No. 13.[3] Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted all of his present claims. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of

---

[3] On September 14, 2017, Petitioner moved the Court for an extension of time to respond to the Respondents' Motion to Dismiss, ECF No. 11, which the Court granted, giving Petitioner until October 23, 2017 to file his response, ECF No. 12. Petitioner filed his Response on October 25, 2017. ECF No. 13.

proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Here, Petitioner raised all but one of the present claims in his state habeas petition before the Supreme Court of Virginia. *See* ECF No. 9, attach. 6. *See also* ECF No. 9 at 3 n.1 ("Although [Petitioner] raised a claim designated as '(a)(2)' in his state habeas, [sic] [Petitioner] has omitted that claim in his federal habeas petition.").

    1. Claim 1 ("(a)(1)") was not considered by the state courts.

    As noted by the Respondent, the argument advanced in the first claim ("(a)(1)") of the state habeas petition is different from that of the first claim ("(a)(1)") of the instant federal Petition. *See* ECF No. 9 at 4, ¶ 6. Specifically, a comparison of the two claims reveals that in the instant federal Petition,

> [Petitioner] is no longer arguing that the instruction omitted an element of the offense (motive). Instead, [Petitioner] is arguing that the evidence was insufficient to establish his guilt beyond a reasonable doubt because, allegedly, the circumstances of motive, time, place, means[,] and conduct did not concur to form an unbroken chain linking [Petitioner] to the murder.

ECF No. 9 at 4, ¶ 6. However, in light of the fact that Petitioner would now be unable to raise this first claim in state court because it would be procedurally barred as both untimely and successive, this claim is concomitantly exhausted and defaulted for the purposes of federal review. *See* ECF No. 9 at 5, ¶ 7. *See also Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as

exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court.") (citing *Gray v. Netherland,* 518 U.S. 152, 161-62 (1996) ("However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.")); *Bassette v. Thompson,* 915 F.2d 932, 936 (4th Cir. 1990) ("The provisions of § 8.01-654(B)(2), Code of Virginia, are clear: 'No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition.'") (quoting Va. Code § 8.01-654(B)(2)).

With the exception of the first claim, the Respondent concedes that all of Petitioner's other current claims are properly exhausted. *See* ECF No. 9 at 3-5, ¶¶ 4-8. Accordingly, the undersigned **FINDS** that Petitioner has exhausted or effectively exhausted his state remedies with respect to Claims 1-6 of the Petition.

### B. Standards of Review

#### 1. 28 U.S.C. § 2254(d)

With respect to those claims that were adjudicated by the state court on their merits, habeas relief is warranted only if Petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this

8

standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[4], §
2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already
rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves
authority to issue the writ in cases where there is no possibility fairminded jurists could disagree
that the state court's decision conflicts with this Court's precedents. It goes no further.") (citing
*Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata* rule"
under § 2244)).   In other words, "AEDPA prohibits federal habeas relief for any claim
adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains."
*Premo v. Moore*, 562 U.S. 115, 121 (2011).

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by
§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.
529 U.S. 362, 404-05 (2000).  A federal habeas court may issue the writ under the "contrary to"
clause if the state court applies a rule different from the governing law set forth in Supreme
Court cases, or if it decides a case differently than the Supreme Court has done on a set of
materially indistinguishable facts.   *Id.* at 405-06.   This Court may grant relief under the
"unreasonable application" clause if the state court correctly identifies the governing legal
principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular
case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).  *See also Woodford v. Visciotti*, 537 U.S.
19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for
these judgments, and authorizes federal-court intervention only when a state-court decision is
objectively unreasonable.").   "The focus of the [unreasonable application] inquiry is on whether
the state court's application of clearly established federal law is objectively unreasonable, and . .

---

[4] Antiterrorism and Effective Death Penalty Act of 1996

. an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves."[5] *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

2. Ineffective Assistance of Counsel

Here, as in *Premo*, because there is no allegation that the state courts decided Petitioner's state habeas "differently than th[e U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is

---

[5] Pursuant to § 2254(d), the federal court must look to the state court decision that was "adjudicated on the merits in State court proceedings . . . resulting in a decision." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). In this case, the qualifying state court decision on the merits was the Supreme Court of Virginia's May 25, 2016 decision on Petitioner's state habeas petition. *See* ECF No. 9, attach. 6.

"permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)). *See also Strickland v. Washington*, 446 U.S. 668 (1984). Generally, to have been entitled to habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner had to show both that his defense counsel provided deficient assistance, and that he was prejudiced as a result of counsel's deficiency. *Strickland v. Washington*, 446 U.S. 668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner was required to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Petitioner was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the State court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and §

11

2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)).

Additionally, if claims are considered procedurally defaulted, the ineffective assistance of counsel may provide good cause to overcome such default. However, "[a]n action or omission by a defendant's lawyer constitutes 'cause' for a procedural default only if it rises to the level of constitutionally ineffective assistance of counsel." *Royal v. Netherland*, 4 F. Supp. 2d 540, 551 (E.D. Va. 1998), *aff'd sub nom. Royal v. Taylor*, 188 F.3d 239 (4th Cir. 1999) (citing *Murray v. Carrier*, 477 U.S. 478 (1986)). To be sure, and particularly apropos to Petitioner's first five claims, the "[f]ailure to raise a meritless argument can *never* amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F.Supp. 724, 731 (E.D.Va.1996)) (emphasis added).

With these principles in mind, the undersigned now turns to the merits of the Petition.

12

### C. Facts and Findings of Law

    1.   Claim 1 ("Claim (a)(1)")

In Claim 1, Petitioner alleges that his Trial Counsel rendered ineffective assistance when he failed to object to Jury Instruction No. 16. ECF No. 1 at 18-20. According to Petitioner, Jury Instruction No. 16 was an "erroneous statement of law." ECF No. 1 at 18-19 (contending that "where the state's evidence is entirely circumstantial, the circumstances of [m]otive, time, place, means[,] and conduct must all concur to form an unbroken chain which links him to the crime beyond a reasonable doubt"). As given by the Trial Court, Jury Instruction No. 16 provided: "[t]he Court instructs the jury that to prove the charge of murder the Commonwealth does not have to prove a motive for the killing. The presence or absence of a motive may be considered in arriving at your verdict." ECF No. 9, attach. 7 at 16. The instant claim for federal habeas relief seeks to add additional required elements (time, place, conduct, and means), as well as the alleged requirement that such elements form an "unbroken" evidentiary chain linking Petitioner to the crime. ECF No. 1 at 18-19.

As previously noted in Part II.A.1, *supra*, Petitioner has not exhausted this claim because when he raised a variation of this issue in his state habeas petition, he argued that only *motive* was a necessary element. *See also* ECF No. 9 at 4-5, ¶¶ 6-7. *See also Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court.") (citing *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and

sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."))

The undersigned **FINDS** that because it was never raised in the state courts, this Claim is procedurally defaulted. This Court may not review claims which have been procedurally defaulted in state court. *S Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *1 (E.D. Va. Mar. 30, 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)). As clearly established by Fourth Circuit case law, "[i]n Virginia, the basic procedural bar rule is a simple one: no writ will be granted on the basis of any legal or factual claim the petitioner could have made previously, but did not." *Pruett v. Thompson*, 771 F. Supp. 1428, 1437 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993) (citing *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108 (1975); Va. Code Ann. § 8.01–654(B)(2)).

However, even if the claim was not defaulted, the claim is meritless and would afford Petitioner no habeas relief. *See Royal v. Netherland*, 4 F. Supp. 2d 540, 551 (E.D. Va. 1998), *aff'd sub nom. Royal v. Taylor*, 188 F.3d 239 (4th Cir. 1999) ("The Supreme Court of the United States has recognized at least three categories of 'cause' which are sufficient to overcome a state procedural default: (1) counsel's inability to know of a legal or factual issue; (2) interference by the prosecution with the habeas petition; and (3) ineffective assistance of counsel.") (citing *Murray v. Carrier*, 477 U.S. 478 (1986)).

In denying a previous version of this claim in Petitioner's state habeas petition, the Supreme Court of Virginia found that Virginia case law supported giving this instruction as is, and therefore Trial Counsel was not ineffective because he could have reasonably concluded that objecting to this instruction would be fruitless. ECF No. 9, attach. 6 at 1-2 (citing *Cantrell v. Commonwealth*, 229 Va. 387, 396-98, 329 S.E.2d 22, 28-29 (1985) (holding that "[m]otive is

merely a circumstance tending to prove the guilt of the alleged perpetrator, as its absence may tend to show his innocence. It is relevant and probative on the issue of identity of the criminal agent, but it is not an element of any crime") (rejecting identical argument to this jury instruction)). The undersigned **FINDS** that to the extent the instant Petition re-raises the "motive" issue, federal review of the claim is not permitted, but even if it was, the undersigned **FINDS** that the Supreme Court of Virginia acted reasonably in disposing of the claim.

Moreover, the claim is meritless in light of express language in *Cantrell*. *See Cantrell v. Commonwealth*, 229 Va. 387, 396–97, 329 S.E.2d 22, 28 (1985) ("We are guided by familiar principles. Where the evidence is *entirely circumstantial*, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence. The chain of necessary circumstances must be unbroken. The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt.") (emphasis added) (quoting *Bishop v. Commonwealth,* 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984) (citing *Stover v. Commonwealth,* 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981); *Inge v. Commonwealth,* 217 Va. 360, 228 S.E.2d 563 (1976))). Petitioner fails to realize that an "unbroken chain" is required *only* when the prosecution's case is "entirely circumstantial."

Here, there were at least two individuals (Sanders and Scott) who *personally witnessed* Petitioner argue with the victim and then shoot the victim, and it is undisputed that the victim succumbed to his gunshot wounds. *See* Part I, *supra*. Thus, the prosecution's case against Petitioner was far from "entirely circumstantial." *See Pijor v. Commonwealth*, 294 Va. 502, 513, 808 S.E.2d 408, 414 (2017) ("A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than

15

other explanations, if any.") (quoting *Toler v. Commonwealth*, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)). It is axiomatic that the "[f]ailure to raise a meritless argument can never amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F.Supp. 724, 731 (E.D. Va. 1996)). Accordingly, the undersigned finds this Claim to be defaulted, without merit, and **RECOMMENDS** that Claim 1("Claim (a)(1)") be **DENIED**.

### 2. Claim 2 ("Claim (a)(3)")

In Claim 2, Petitioner contends that his Trial Counsel provided ineffective assistance when he failed to object to Jury Instruction No. 4. ECF No. 1 at 20-22. As given by the Trial Court, Jury Instruction No. 4 provided:

> The Court instructs the jury that if you believe from the evidence that a witness other than the defendant previously made a statement inconsistent with his testimony at this trial, the only purpose for which that statement may be considered by you is its bearing on the witness's credibility. It is not evidence that what the witness previously said is true.

ECF No. 9, attach. 7 at 4. This instruction accurately states the law regarding the treatment of a witness' prior inconsistent statements. *See Royal v. Commonwealth*, 234 Va. 403, 405, 362 S.E.2d 323, 324 (1987) ("A prior inconsistent statement is received in evidence exclusively to attack the credibility of the witness who has given different accounts of the facts at different times. The prior statement is not evidence of the truth of the earlier account and the trial court, upon request, must instruct the jury accordingly.") (citing *Pugh v. Commonwealth*, 233 Va. 369, 375, 355 S.E.2d 591, 595 (1987); Va. Code Ann. § 8.01-403 ("A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony . . .")). For this

16

reason, the Supreme Court of Virginia rejected this claim when it was raised in the state habeas action. *See* ECF No. 9, attach. 6 at 2-3 (holding that "[Trial] Counsel reasonably could have determined any argument to the contrary would have been meritless. Thus, petitioner has failed to demonstrate that [Trial Counsel's] performance was either deficient or that there is a reasonable probability that, but for [Trial Counsel's] alleged error, the result of the proceeding would have been different.").

The Supreme Court of Virginia's reasoning was sound, and accurately reflected the law. Based on these circumstances, the Supreme Court of Virginia's decision was not unreasonable, and for the aforementioned reasons, the undersigned **RECOMMENDS** that Claim 2 ("Claim (a)(3)") be **DENIED**.

### 3. Claim 3 ("Claim (a)(4)")

In Claim 3, Petitioner argues that his Trial Counsel was ineffective because he requested a manslaughter instruction, but when prompted by the Trial Court to point to evidence in support of this instruction, Trial Counsel failed to argue that there was "more than a scintilla of evidence" that Petitioner had acted in the heat of passion. ECF No. 1 at 23-24. Rather than making the argument suggested by Petitioner, Trial Counsel responded to the Trial Court's inquiry by stating: "Just you never know what a jury will hang their hat on." ECF No. 9, attach. 6 at 3. *See also* ECF No. 1 at 24 (same). The Supreme Court of Virginia rejected this claim. *See* ECF No. 9, attach. 6 at 3.

In his Petition, Petitioner seems to agree with (or at least, does not dispute) the Virginia Supreme Court's recitation of the factual basis undergirding its determination that the evidence militated against giving a manslaughter instruction. *Compare* ECF No. 9, attach. 6 at 3 ("The record, including the trial transcript, demonstrates that the victim, Terrance Moore, and a friend

17

went to a party at the apartment petitioner shared with his girlfriend, Erika Sanders, and Sanders'

three sons.  Moore was the children's father, but there was no evidence Moore and Sanders had

an ongoing romantic relationship.  Petitioner did not initially express any hostility toward Moore.

After the party ended and Sanders invited Moore and his friend to spend the night in the

children's room, petitioner became agitated and aggressive toward Moore.  Moore remained calm

and did not respond to petitioner in an angry or aggressive way.  Petitioner pulled out a gun but

immediately put it away again.  Moore said one word, which witnesses did not understand, to

which petitioner responded 'What?' before shooting Moore.  Moore began to plead with

petitioner, but petitioner shot Moore a second time, while standing over him."), *with* ECF No. 1

at 23-24 ("The facts are straightforward that the victim, Terrance Moore, and a friend went to a

party at the apartment Petitioner shared with Erika Sanders and Sanders['] three kids.  Moore

was the kids['] father, but there was no evidence Moore and Sanders had an going romantic

relationship, as argued by the Commonwealth Attorney.  Petitioner did not express any hostility

toward [sic] Moore.").  Petitioner then contends that "[t]he record is straightforward that from

the testimony of Ameena Scott, that the victim did *something* to reasonably provoke Petitioner

to temporarily affect his self-control."  ECF No. 1 at 24 (emphasis added).  Notably, the Petition

fails to identify what that "something" was.

In rejecting this claim, the Supreme Court of Virginia determined that Petitioner failed to

establish the prejudice prong of *Strickland*, because "[t]here is no evidence to show Moore did

anything to reasonably provoke petitioner to kill him" and therefore Petitioner "failed to

demonstrate that, but for [Trial Counsel's] alleged error, the result of the proceeding would have

been different."   ECF No. 9, attach. 6 at 3 ("To reduce a homicide from murder to voluntary

manslaughter, the killing must have been done in the heat of passion and upon reasonable

18

provocation. Heat of passion is determined by the nature and degree of the provocation, and may be founded upon rage, fear, or a combination of both.") (quoting *Barrett v. Commonwealth*, 231 Va. 102, 105-06,341 S.E.2d 190, 192 (1986) (internal citations omitted)).

The undersigned **FINDS** that Claim 3 amounts to a meritless claim, and "the Supreme Court of Virginia's rationale for denying his petition was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010). Accordingly, the undersigned **RECOMMENDS** that Claim 3 ("Claim (a)(4)") be **DENIED**.

4. <u>Claim 4 ("Claim (a)(5)")</u>

In Claim 4, Petitioner argues that Trial Counsel rendered ineffective assistance when he failed to object to Jury Instruction No. 12 because as given, this instruction contained an incorrect statement of law in its definition of malice. ECF No. 1 at 24-25 (identifying the "error" as "the instruction effectively informed the jury that malice could result from provocation in the heat of passion"). Jury Instruction No. 12 provided

> The Court instructs the jury that malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.

ECF No. 9, attach. 7 at 12. The Supreme Court of Virginia rejected this claim, finding that neither *Strickland* prong was satisfied because

> The record, including the trial transcript and the approved instructions, demonstrates that instruction 12 states that "malice may result from any unlawful or unjustifiable motive including anger, hatred, or revenge." The instruction does not suggest that malice may result from provocation in the heat of passion and

> counsel could reasonably have determined any argument to the contrary would
> have been meritless.

ECF No. 9, attach. 6 at 4.  Simply because Petitioner interpreted the subject instruction to insert

an unstated meaning does not mean that a) such interpretation was correct, and even if it was, b)

that the failure to lodge such objection was outside the wide range of permissible conduct of an

attorney rendering effective assistance of counsel.   It cannot be overstated: "[f]ailure to raise a

meritless argument can never amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp.

3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F.Supp. 724, 731 (E.D. Va.

1996)).  The Supreme Court of Virginia's finding was not unreasonable.  Accordingly, the

undersigned **RECOMMENDS** that Claim 4 ("Claim (a)(5)") be **DENIED**.

### 5.  Claim 5 ("Claim (a)(6)")

In Claim 5, Petitioner seeks federal habeas relief on the grounds that he received

ineffective assistance of counsel because Trial Counsel did not move "to have the murder

indictment dismiss [sic] upon the ground that VA Statute [Va. Code Ann. §] 18.2-32 is

unconstitutional as it does not define the word murder." ECF No. 1 at 26-27.  The Supreme

Court of Virginia dismissed this claim when Petitioner raised it in his state habeas petition,

holding that this claim

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test
> enunciated in *Strickland*.  Code § 18.2-32 distinguishes the degrees of murder,
> describing the differences between first and second degree murder, and specifies
> the punishment for each.   Murder is defined by common law as a homicide
> committed with express or implied malice, and this common law definition has
> been recognized in Virginia.  *Pugh v. Commonwealth*, 223 Va. 663, 667, 292
> S.E.2d 339, 341 (1982); *Biddle v. Commonwealth*, 206 Va. 14, 20, 141 S.E.2d
> 710, 714 (1965).  Considering Code § 18.2-32 and the common law definition of
> murder, petitioner's charge was sufficiently definite that a person of "ordinary
> intelligence" could understand what conduct is prohibited and enforcement is not
> arbitrary.  *See Woodfin v. Commonwealth*, 236 Va. 89, 92-93, 372 S.E.2d 377,

379 (1988) (Code § 18.2-31, the capital murder statute, is not vague and is sufficiently definite that person can understand prohibited conduct). Counsel reasonably could have determined moving to dismiss the indictment because Code § 18.2-32 is unconstitutional would have been meritless. Thus, petitioner has failed to demonstrate counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different

ECF No. 9, attach. 6 at 4. This statute is impervious to Petitioner's void for vagueness challenge when subjected to "the rigorous standard that criminal defendants must meet to establish such a claim." *United States v. Passaro*, 577 F.3d 207, 217 (4th Cir. 2009) (citing *United States v. Williams*, 553 U.S. 285 (2008)). As established by the Supreme Court of the United States,

"A conviction fails to comport with due process" and so is void for vagueness only "if the statute under which it is obtained [1] fails to provide a person of ordinary intelligence fair notice of what is prohibited, or [2] is so standardless that it authorizes or encourages seriously discriminatory enforcement."

*United States v. Passaro*, 577 F.3d 207, 217 (4th Cir. 2009) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). In *Passaro*, because "assault" enjoyed a long-standing common law definition, the Fourth Circuit foreclosed the argument that the statute penalizing assault was unconstitutionally vague. *See id.* at 217-18 (observing that "courts have uniformly recognized that various federal statutes criminalizing 'assault' incorporate the long-established common law definition of that term") (citing *United States v. Chestaro*, 197 F.3d 600, 604–05 (2d Cir. 1999) (rejecting contention that federal assault statute is void for vagueness); *United States v. Dupree*, 544 F.2d 1050, 1051–52 (9th Cir. 1976) (same)). In light of the abundance of Virginia case law evidencing the well-established acceptance of the common law definition of "murder," Trial Counsel did not render ineffective assistance by failing to raise a meritless objection, and the Supreme Court of Virginia was not unreasonable in drawing this conclusion.

21

Accordingly, the undersigned **FINDS** that the claim is meritless, the Supreme Court of Virginia's rejection of this claim was not unreasonable, and **RECOMMENDS** that Claim 5 ("Claim (a)(6)") be **DENIED**.

### 6. Claim 6 ("Claim (b)")

In his final and only non-*Strickland* claim, Petitioner argues that he was indicted for Second Degree Murder, rather than First Degree Murder, and therefore he could not have been convicted of First Degree Murder. ECF No. 1 at 28. Petitioner also argues that the indictment under which he was charged "did not allege the elements [of First Degree Murder] – willful[,] deliberate[,] and premeditated." ECF No. 1 at 28. Accordingly, Petitioner argues that his

> constitutional rights to a fair proceeding was [sic] violated and his July 11, 2013 conviction order for first degree murder is void ab [initio] because a mode of criminal [sic] that could not lawfully be adopted was used when judgment against [Petitioner] was based on facts not alleged in the Pleadings.

ECF No. 1 at 28-29.

The Supreme Court of Virginia rejected this claim when it was raised in Petitioner's state habeas petition. ECF No. 9, attach. 6 at 5. Specifically, the Supreme Court of Virginia found not only that the subject indictment "was sufficient to charge first-degree murder," but also that "[a]ny defect or omission in the indictment is waived because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus." ECF No. 9, attach. 6 at 5 (citing *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975)). As clearly established by Fourth Circuit case law, "[i]n Virginia, the basic procedural bar rule is a simple one: no writ will be granted on the basis of any legal or factual claim the petitioner could have made previously, but did not." *Pruett v. Thompson*, 771 F. Supp. 1428, 1437 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993) (citing *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419

U.S. 1108 (1975); Va. Code Ann. § 8.01–654(B)(2)).  This Court may not review claims which have been procedurally defaulted in state court.  *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *1 (E.D. Va. Mar. 30, 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)).

Notwithstanding the procedural default, this claim lacks merit.  The subject indictment provided the following: "ANTOINE LORENZO BOWDEN, [o]n or about August 13, 2011, feloniously did kill and murder Terrence Moore against the peace and dignity of the Commonwealth, in violation of § 18.2-32 of the Code of Virginia (1950) as amended."  ECF No. 9 at 18 n.12.  This "short form" indictment is expressly permitted by Va. Code § 19.2-221 to charge first degree murder.  *See e.g., Walshaw v. Commonwealth*, 603 S.E. 2d 633, 635, 636-37 (Va. Ct. App. 2004) ("The GRAND JURY . . . charges that on or about January 23, 2002, in the aforesaid Judicial Circuit, the accused, STEVE FREDERICK WALSHAW did feloniously kill and murder one Karen Paulette Tegeler, in violation of Virginia Code Section 18.2-32.").  *See also* Va. Code Ann. § 19.2-221 ("The prosecutions for offenses against the Commonwealth, unless otherwise provided, shall be by presentment, indictment or information. While any form of presentment, indictment or information which informs the accused of the nature and cause of the accusation against him shall be good the following shall be deemed sufficient for murder and manslaughter: Commonwealth of Virginia .......... county (or city) to-wit: The grand jurors of the Commonwealth of Virginia, in and for the body of the county (or city) of .........., upon their oaths present that A .......... B .........., on the ... day of .........., 20..., in the county (or city) of .......... feloniously did kill and murder one C .......... D .......... against the peace and dignity of the Commonwealth.").

The undersigned **FINDS** that the Supreme Court of Virginia's disposition of this claim of error bars this Court's further inquiry into the matter. *See* ECF No. 9, attach. 6 at 5 (citing *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975)). Additionally, the state court reasonably found that the claim lacked merit. Accordingly, the undersigned **RECOMMENDS** that Claim 6 ("Claim (b)") be **DENIED**.

### III.    RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 7, be **GRANTED**, and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### IV.    REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Gallop is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S.

140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985);

*United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

     The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for the Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 8, 2018